1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10
11

IN RE:  BEXTRA AND CELEBREX
MARKETING SALES PRACTICES AND
PRODUCT LIABILITY LITIGATION

Case No.:  M:05-cv-01699-CRB

12

MDL No. 1699

13
14
15

This Document Relates To:

ALL CASES.

**PRETRIAL ORDER NO. 8
COMMON BENEFIT ORDER
(ESTABLISHING COMMON BENEFIT
FUND TO COMPENSATE AND
REIMBURSE ATTORNEYS FOR
SERVICES PERFORMED AND EXPENSES
INCURRED FOR MDL ADMINISTRATION
AND OTHERWISE FOR PLAINTIFFS'
GENERAL BENEFIT)**

16
17
18
19
20
21

   This order is entered to provide for the fair and equitable sharing among plaintiffs of the

22

cost of special services performed and expenses incurred by attorneys acting for MDL

23

administration and common benefit of all plaintiffs in this complex litigation.  This Court's

24

authority therefore derives from the Supreme Court's common benefit doctrine, as established in

25

*Trustees v. Greenough*, 105 U.S. 527 (1881); refined in, *inter alia*, *Central Railroad & Banking*

26

*Co. v. Pettus,* 113 U.S. 116 (1884); *Sprague v. Ticonic National Bank,* 307 U.S. 161 (1939);

27

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Boeing Co. v. Van Gemert*, 444 U.S. 472

28

(1980); and approved and implemented in the MDL context, in, *inter alia*, *In re MGM Grand*

*Hotel Fire Litigation*, 660 F.Supp. 522, 525-29 (D. Nev. 1987); *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1019-21 (5th Cir. 1977). Any disputes arising under this Order which can not be resolved by agreement of Counsel, will be resolved by this Court in the exercise of its jurisdiction under the equitable principles of the common fund/common benefit doctrine.

The Court Orders as follows:

### A.   Common Benefit Expense Fund to be Established

Plaintiffs' Liaison Counsel (Elizabeth J. Cabraser of Lieff, Cabraser, Heimann & Bernstein, LLP) is directed to establish an interest-bearing account at Citibank, N.A., San Francisco, California to receive and disburse funds as provided in this order. Counsel have agreed on, and designate, Citibank, N.A. as escrow agent for this purpose. These funds will be held as funds subject to the direction of the Court and are hereinafter referred to as the "common benefit fund." No party or attorney has any individual right to any of these funds except to the extent of amounts directed to be disbursed to such person by order of the Court. These funds do not constitute the separate property of any party or attorney and are not subject to garnishment or attachment for the debts of any party or attorney except when and as directed to be disbursed as provided by court order to a specific person. These limitations do not preclude a party or attorney from transferring, assigning, or creating a security interest in potential disbursements from the fund if permitted by applicable state laws and if subject to the conditions and contingencies of this order.

### 1.   Assessments for the Common Benefit Expense Fund.

a.   All plaintiffs and their attorneys who either agree or have agreed to settle, compromise, dismiss, or reduce the amount of a claim or, with or without trial, recover a judgment for monetary damages or other monetary relief, including compensatory and punitive damages, with respect to any Bextra and/or Celebrex claims are subject to an assessment of the "gross monetary recovery," as provided herein.

b.  Defendants are directed to withhold the amount of this assessment from any amounts paid to plaintiffs and their counsel, and to pay the assessment directly into the common benefit fund as a credit against the settlement or judgment.  If for any reason the assessment is not or has not been so withheld, the plaintiff and his counsel are jointly responsible for paying the assessment into the common benefit fund promptly.

c.  No orders of dismissal of any plaintiff's claim in which any recovery is received, and which is subject to this order, shall be filed unless accompanied by a certificate of plaintiff's and defendants' counsel that the assessment has been withheld and deposited into the common benefit fund.

d.  The Plaintiffs' Steering Committee shall provide Defendants' Liaison Counsel, all plaintiffs' counsel, the escrow agent, and the Court or its designee with a list of cases and/or counsel who have entered into written agreements with the Plaintiff's Steering Committee.  In the event there is a dispute as to whether a case should be on the list, the Plaintiffs' Steering Committee shall resolve the matter with the particular plaintiff's counsel either informally or upon motion.

e.  In measuring the "gross monetary recovery":

(1)  Exclude court costs that are to be paid by the defendant.

(2)  Include the present value of any fixed and certain payments to be made in the future.

f.  This obligation attaches in the following instances:

(1)  90-Day Participation Option.  For all cases whose counsel have agreed within 90 days of this Order to cooperate with the MDL by signing an appropriate agreement [attached hereto as Exhibit A], the assessment in such cases shall be two percent (2%) as fees and two percent (2%) as costs (a total of four percent (4%)) of the "gross monetary recovery."  The assessment shall apply to all Bextra and/or Celebrex cases involving any full participation counsel now pending or later filed in, transferred to, or

removed to, this Court as well as all unfiled and tolled cases and claims treated as part of the coordinated proceeding known as *In re: Bextra and Celebrex Manufacturing, Sales Practices, and Products Liability Litigation*, MDL 1699, and resolved during its pendency (beginning the date the MDL was assigned by the MDL Panel), including cases later remanded to a state court or any cases on tolling agreements, filed in any state court, or clients whose cases are as yet unfiled.  Two percent (2%) shall be deemed fees to be subtracted from the attorneys' fees portions of individual fee contracts, and two percent (2%) shall be deemed costs to be subtracted from the client portion of individual fee contracts.  This option shall be required on all cases (state, federal, filed or unfiled) by all members of the PSC, any PSC sub-committee members, and any Court approved State Liaison Committee.

(2)     Post 90-Day Assessment Options.

(a)     Later participation by attorneys with no prior filed Bextra/Celebrex cases.  Following the 90-Day period in the preceding paragraph, any counsel who files for the first time a case involving a personal injury claim relating to Celebrex or Bextra that becomes part of this MDL shall have 45 days from the date of initial filing of the claim to cooperate with the MDL by signing an appropriate agreement [attached hereto as Exhibit A], and the assessment in such cases shall be two percent (2%) as fees and two percent (2%) as costs (a total of four percent (4%)) of the "gross monetary recovery."  The assessment shall apply to all Bextra and/or Celebrex cases involving any full participation counsel now pending or later filed in, transferred to, or removed to, this Court as well as all unfiled and tolled cases and claims treated as part of the coordinated proceeding known as *In re: Bextra and Celebrex Manufacturing,*

*Sales Practices, and Products Liability Litigation*, MDL 1699, and resolved during its pendency (beginning the date the MDL was assigned by the MDL Panel), including cases later remanded to a state court or any cases on tolling agreements, filed in any state court, or clients whose cases are as yet unfiled.  Two percent (2%) shall be deemed fees to be subtracted from the attorneys' fees portions of individual fee contracts, and two percent (2%) shall be deemed costs to be subtracted from the client portion of individual fee contracts.

(b)     Non-participation in MDL.  Any Counsel who determines not to participate in the MDL, but who desires access to MDL and/or PSC non-work-product materials, including but not limited to non-work product portions of the virtual document repository, shall be allowed access to such non-work product materials pursuant to the terms outlined in Pretrial Order No. 4.

(c)     Later Participation.  Other than as identified in paragraph A1f(2)(a) above, following the initial 90-day period to permit counsel to consider the 90-Day Participation Option, Counsel who sign an appropriate agreement [Attached hereto as Exhibit B] shall be assessed on all Bextra and/or Celebrex cases now pending, or later filed in, transferred to, or removed to, this court and treated as part of the coordinated proceeding known as *In re: Bextra and Celebrex Manufacturing, Sales Practices, and Products Liability Litigation*, MDL 1699, as well as unfiled or tolled cases, in the amount of the "gross monetary recovery" established and agreed to by the PSC. This amount shall exceed the 4% assessment under the full participation option. Such counsel shall also be assessed in the same amount of the "gross monetary recovery" such as shall be

established by the PSC on any other cases filed in any state court, and on clients whose cases are as yet unfiled, or whose cases are later remanded to state court; unless these percentages are modified by agreement of counsel or by the Court upon showing of good cause.

2. **Disbursements from Common Benefit Expense Fund.**

a. Upon order of the Court, payments may be made from the fund to attorneys who provide services or incur expenses for the joint and common benefit of plaintiffs in addition to their own client or clients. Attorneys eligible are limited to Plaintiffs' Liaison Counsel, members of the Plaintiffs' Steering Committee, and other attorneys called upon by them to assist in performing their responsibilities, any Court appointed State Liaison Counsel, and other attorneys performing similar responsibilities in state court actions. All time and expenses are subject to proper and timely submission of contemporaneous records certified to have been timely received.

b. Payments will be allowed only to entities for special services performed, and to reimburse for special expenses incurred, for the joint and common benefit of all plaintiffs.

c. Payment may, for example, be made for services and expenses related to the obtaining, reviewing, indexing, and payment for hard copies of computerized images of documents for the defendants; to conducting depositions; and to activities connected with the coordination of federal and state litigation. The fund will not, however, be used to pay for services and expenses primarily related to a particular case, such as the deposition of a treating physician, even if such activity results in some incidental and consequential benefit to other plaintiffs.

d. Payments will not exceed the fair value of the services performed (plus any court approved multiplier) or the reasonable amount of the expenses incurred, and,

depending upon the amount of the fund, may be limited to a part of the value of such services and expenses.

e.  No amounts will be disbursed without review and approval by the Court or such other mechanism as the Court may order.  Defense Counsel shall provide at least quarterly notice to the Court or its designee of the names and docket numbers of the cases for which it has made an assessment.  Details of any individual settlement agreement, individual settlement amount and individual amounts deposited into escrow shall be confidential and shall not be disclosed to the Plaintiffs' Steering Committee, the Court, or the Court's designee.  However, monthly statements from the escrow agent shall be provided to Plaintiffs' Liaison Counsel, Defense Liaison Counsel, the Court, and the Court's designee showing only the aggregate of the monthly deposits, disbursements, interest earned, financial institution charges, if any, and current balance.

f.  If the fund exceeds the amount needed to make all payments as provided in this order (for court approved costs, fees, and any court approved multiplier on any fees), the Court may order a refund to those who have contributed to the fund.  Any such refund will be made in proportion to the amount of the contributions.

**3.  <u>Incorporation by Reference</u>**

The individual attorney agreements attached hereto as Exhibits A and B are incorporated by reference and have the same effect as if fully set forth in the body of this order.

**B.  <u>Plaintiffs' Common Cost Fund and Submission of Time and Expense.</u>**

**1.  <u>Plaintiffs' Counsel's Time and Expense Submissions</u>**

Reimbursement for costs and/or fees for services of all Plaintiffs' counsel performing functions in accordance with this order will be set at a time and in a manner established by the Court after due notice to all counsel and after a hearing.  The following standards and procedures are to be utilized by any counsel who will seek fees and/or expense reimbursement.

a.  <u>General Standards</u>

(1)     All time and expenses submitted must be incurred only for work authorized by the Plaintiffs' Steering Committee.

(2)     These Time and Expense Guidelines are intended for all activities performed and expenses incurred by counsel that relate to matters common to all claimants in MDL 1699.

(3)     Time and expense submissions must be made on the forms prepared by Plaintiffs' Liaison Counsel.

(4)     Plaintiffs' Liaison Counsel has retained and the Court approves the retention of Jude Demasco, of the accounting firm of Demasco & Associates to assist and provide accounting services to Plaintiffs' Liaison Counsel and the Plaintiffs' Steering Committee in MDL 1699.  Demasco & Associates will assist in compiling submissions and will provide reports to Plaintiff's Liaison Counsel who shall retain them.   These reports will include both time and expenses and will summarize, with back-up detail, the submissions of all firms.

(5)     Time and expense submissions must be submitted timely to Plaintiffs' Liaison Counsel so they can be compiled and submitted to Demasco & Associates.  It is therefore essential that each firm timely submit its records for the preceding month.

(6)     All submissions shall be transmitted electronically to Plaintiffs' Liaison Counsel by the 15th day after the end of any bi-monthly period.

(7)     The first submission is due on March 15, 2006 and should include all time beginning with the date the MDL was assigned by the MDL Panel to this MDL to this Court through February 28, 2006.  Thereafter, time records shall be submitted on the 15th day of each month and shall cover the time period through the end of the preceding month.

b.     <u>Time Reporting</u>

(1)     Only time spent on matters common to all claimants in MDL 1699 ("common benefit work") will be considered in determining fees.  <u>No time spent on developing or processing individual issues in any case for an individual client (claimant) will be considered or should be submitted.</u>

(2)     All time must be accurately and contemporaneously maintained.  Time shall be kept according to these guidelines and specifically in accordance with the Litigation Task Definitions as outlined in Attachment "A".  All counsel shall keep a daily record of their time spent in connection with common benefit work on this litigation, indicating with specificity the hours, location and particular activity (such as "conduct of deposition of A.B.").

(3)     All common benefit work time for each firm shall be maintained in a quarter-of-an-hour or smaller increments.

(4)     All time records for common benefit work shall be summarized by accumulated total of all time incurred by the firm during the particular reporting period and in prior periods.  The summary report form may then be obtained from Plaintiffs' Liaison Counsel by participating firms.

**2.      <u>Expense Reporting:  Shared and Held Costs</u>**

a.      Advanced costs will be deemed as either "Shared" or "Held."

(1)     Shared Costs are costs that will be paid out of a separate Plaintiffs' Steering Committee MDL 1699 Fund account to be established by Plaintiffs' Liaison counsel at Citibank, N.A., and to be funded by all members of the PSC and others as determined by the PSC.  The PSC MDL 1699 Fund account will be administered by Lieff, Cabraser, Heimann & Bernstein, LLP.

(2)     Held Costs are those that will be carried by each attorney in MDL 1699 and reimbursed as and when determined by the PSC.

b.      Each member of the PSC and any others as set forth in Pre-Trial Order No. 2 will contribute to the Plaintiffs' Steering Committee MDL 1699 Fund at times and in amounts sufficient to cover Plaintiffs expenses for the administration of the MDL. The timing and amount of each assessment will be determined by the PSC, and each assessment will be paid within 15 days to Plaintiffs' Liaison Counsel.  Failure to pay assessments will be grounds for suspension from the PSC.

c.      <u>Shared Costs</u>

(1)     Shared Costs are costs incurred for the common benefit of the MDL as a whole.  No client-related costs can be considered as Shared Costs.  All costs of a substantial nature that meet these requirements and fall under the following categories shall be considered Shared Costs and qualify to be submitted and paid directly from the MDL account.  All Shared Costs must be approved by Plaintiffs' Liaison Counsel and the Administrative Committee  prior to payment.  Shared Costs include:

(a)     Court, filing and service costs

(b)     Deposition and court reporter costs

(c)     Document Depository:  creation, operation, staffing, equipment and administration

(d)     Plaintiffs' Liaison Counsel administrative matters (e.g., expenses for equipment, technology, courier services, long distance, telecopier, electronic service, photocopy and printing, secretarial/temporary staff, etc.)

(e)     PSC group administration matters such as meetings and conference calls

(f)     Legal and accountant fees

(g)     Expert witness and consultant fees and expenses

(h)     Printing, copying, coding, scanning (out of house or extraordinary firm cost)

1                 (i)     Research by outside third party vendors/consultants/

2 attorneys

3                 (j)     Common witness expenses including travel

4                 (k)     Translation costs

5                 (l)     Bank or financial institution charges

6                 (m)     Investigative service

7     (2)     Plaintiffs' Liaison Counsel shall prepare and be responsible for distributing

8 to the appropriate plaintiffs' counsel and the PSC reimbursement

9 procedures and the forms associated therewith. Request for payments

10 described include sufficient information to allow Plaintiffs' Liaison

11 Counsel and the CPA to account properly for costs and to provide adequate

12 detail to the Court. All requests shall be subject to review and approval by

13 Plaintiffs' Liaison Counsel and the Administrative Committee.

14    d.    <u>Held Costs</u>

15     (1)     Held Costs are costs incurred for the global benefit of the MDL. Held

16 Costs are those that do not fall into the above Shared Costs categories but

17 are incurred for the benefit of all plaintiffs in general. No specific client-

18 related costs can be considered as held Costs. All costs of a substantial

19 nature that meet these requirements and fall under the following categories

20 shall be considered Held Costs and qualify to be submitted for

21 consideration by the PSC and the Court for future reimbursement.

22     (2)     Held Cost records shall be submitted to Plaintiffs' Liaison Counsel on a bi-

23 monthly basis with any time reports.

24    e.    <u>Travel Limitations</u>

25     Except in extraordinary circumstances approved by Plaintiffs' Liaison Counsel or the

26 PSC, all travel reimbursements are subject to the following limitations:

27     (1)     <u>Airfare</u>. Only the price of a coach seat for a reasonable itinerary will be

28 reimbursed.

(2)    <u>Hotel</u>.  Hotel room charges will be reimbursed up to the greater of (a) $300 in San Francisco or New York City, or $250 per night outside of San Francisco or New York City, excluding taxes, or (b) the average available room rate of the Hyatt, Hilton, and Marriott hotels in that city.

(3)    <u>Meals</u>.  Meal expenses must be reasonable.

(4)    <u>Cash Expenses</u>.  Miscellaneous cash expenses for which receipts generally are not available (tips, luggage handling, pay telephone, etc.) will be reimbursed up to $50.00 per trip, as long as the expenses are properly itemized.

(5)    <u>Rental Automobiles</u>.  Luxury automobile rentals will not be fully reimbursed, unless only luxury automobiles were available.  If luxury automobiles are selected when non-luxury vehicles are available, then the difference between the luxury and non-luxury vehicle rates must be shown on the travel reimbursement form, and only the non-luxury rate may be claimed.

(6)    <u>Mileage</u>.  Mileage claims must be documented by stating origination point, destination, total actual miles for each trip, and the rate per mile paid by the member's firm.  The maximum allowable rate will be the maximum rate allowed by the IRS (currently 40.5 cents per mile).

f.    <u>Non-Travel Limitations</u>

The following apply:

(1)    <u>Long Distance and Cellular Telephone</u>:  Long distance and cellular telephone charges must be documented.  Copies of the telephone bills must be submitted with notations as to which charges relate to the Bextra/Celebrex litigation.

(2)    <u>Shipping, Courier, and Delivery Charges</u>:  All claimed expenses must be documented with bills showing the sender, origin of the package, recipient, and destination of the package.

(3)   Postage Charges:   A contemporaneous postage log or other supporting documentation must be maintained and submitted.  Postage charges are to be reported at actual cost.

(4)   Telefax Charges:   Contemporaneous records should be maintained and submitted showing faxes sent and received.  The per-fax charge shall not exceed $1.00 per page.

(5)   In-House Photocopy:   A contemporaneous photocopy log or other supporting documentation must be maintained and submitted.   The maximum copy charge is 20¢ per page.

(6)   Secretarial and Clerical time:  An itemized description of the task and time spent must be submitted for secretarial and clerical time.  All overtime must be approved before submission by Plaintiffs' Liaison Counsel or the PSC.

(7)   Computerized Research – Lexis/Westlaw:  Claims for Lexis, Westlaw, and other computerized legal research expenses should be in the exact amount charged to the firm for these research services.

**3.   Procedures To Be Established by Plaintiffs' Liaison Counsel for Cost and Time Submission**

Plaintiffs' Liaison Counsel shall establish forms and procedures to implement and carry out any time and expense submissions required by the Court and for reimbursement from the PSC MDL 1699 Shared Costs Fund.  These forms may be obtained from Plaintiffs' Liaison Counsel. The forms shall be certified by a senior partner in each firm attesting to the accuracy and correctness for the submissions.

Questions regarding the guidelines or procedures or the completion of any forms should be directed to Plaintiffs' Liaison Counsel, Jude Demasco & Associates, or the Court.

Date: February 27, 2006

_____/s/_____
CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

# AGREEMENT
## (90-DAY PARTICIPATION OPTION)

This Agreement is made this _____ day of _____, 200___, by and between the Plaintiffs' Steering Committee ("PSC") appointed by the United States District Court for the Northern District of California in MDL No. 1699 and **[FILL IN THE NAME OF THE FIRM EXECUTING THE AGREEMENT]** (hereinafter "the Participating Attorneys").

WHEREAS, the United States District Court for the Northern District of California has appointed Elizabeth J. Cabraser, Joseph Cotchett, Richard J. Arsenault, Don Barrett, Steve W. Berman, Peter W. Burg, Thomas P. Cartmell, Michael A. Galpern, Carlene Rhodes Lewis, Tina Bailer Nieves, Frank M. Pitre, Kristian W. Rasmussen, Mark Robinson, Christopher Seeger and Paul Sizemore to serve as members of the PSC to facilitate the conduct of pretrial proceedings in the federal actions relating to the marketing sales, and use of Bextra and/or Celebrex.

WHEREAS, the PSC in association with other attorneys working for the common benefit of plaintiffs have developed or are in the process of developing work product which will be valuable in the litigation of state court proceedings involving Bextra and/or Celebrex induced injuries and marketing and sales practices (the "PSC Work Product") and

WHEREAS, the Participating Attorneys are desirous of acquiring the PSC Work Product and establishing an amicable, working relationship with the PSC for the mutual benefit of their clients;

NOW, THEREFORE, in consideration of the covenants and promises contained herein, and intending to be legally bound hereby, the parties agree as follows:

1.      With respect to each client who they represent in connection with a Bextra and/or Celebrex related claim, whether currently with a filed claim in state or federal court or unfiled or on a tolling agreement, each of the Participating Attorneys shall deposit or cause to be deposited in an MDL Fee and Cost Account established by the District Court in the MDL a percentage proportion of the gross amount recovered by each such client which is equal to four percent (4%) of the gross amount of recovery of each such client (2% fees; 2 % costs).  For purposes of this Agreement, the gross amount of recovery shall include the present value of any fixed and certain

payments to be made to the plaintiff or claimant in the future.  It is the intention of the parties that such assessment shall be in full and final satisfaction of any present or future obligation on the part of each Plaintiff and/or Participating Attorney to contribute to any fund for the payment or reimbursement of any legal fees, services or expenses incurred by, or due to, the MDL and/or any Common Benefit Attorneys.

2.     The Participating Attorneys, on behalf of themselves, their affiliated counsel, and their clients, hereby grant and convey to the PSC a lien upon and/or a security interest in any recovery by any client who they represent in connection with any Bextra and/or Celebrex induced injury and marketing and sales practices, to the full extent permitted by law, in order to secure payment in accordance with the provisions of paragraph 1 of this Agreement.  The Participating Attorneys will undertake all actions and execute all documents which are reasonably necessary to effectuate and/or perfect this lien and/or security interest.

3.     The amounts deposited in the MDL Fee and Cost Account shall be available for distribution to attorneys who have performed professional services or incurred expenses for the benefit of the plaintiffs in MDL 1699 and any coordinated state court litigation pursuant to written authorization from the Liaison counsel of the PSC.  Such sums shall be distributed only upon an Order of the Court in MDL 1699 which will be issued in accordance with applicable law governing the award of fees and costs in cases involving the creation of a common benefit. Appropriate consideration will be given to the experience, talent and contribution made by all of those authorized to perform activities for the common benefit, including the Participating Attorneys.

4.     As the litigation progresses and work product of the same type and kind continues to be generated, the PSC will provide Participating Attorneys with such work product and will otherwise cooperate with the Participating Attorneys to coordinate the MDL litigation and the state litigation for the benefit of the plaintiffs.

5.     No assessment will be paid by the Participating Attorneys on any recovery resulting from a medical malpractice claim against a treating physician.

6.     It is understood and agreed that the PSC and Common Benefit Attorneys may also apply to the Court for class action attorneys' fees (including any multiplier) and reimbursement of expenses, if appropriate, and this Agreement is without prejudice to the amount of fees or costs to which the PSC and Common Benefit Attorneys may be entitled to in such an event.

7.     Upon execution of this Agreement, the PSC will provide to the Participating Attorneys, to the extent developed, the PSC Work Product, including access to the PSC's virtual depository.

8.     The Participating Attorneys shall have the following rights:

a.     Full participation in discovery matters and appropriate committee assignments with full recognition of the participation of the Participating Attorneys;

b.     Appropriate participation and consultation in settlement negotiations;

c.     Appropriate participation in trials, class matters, management, fund administration and allocation of fees and costs.

9.     Both the PSC and the Participating Attorneys recognized the importance of individual cases and the relationship between case-specific clients and their attorneys.  Regardless of the type of settlement or conclusion eventually made in either state or federal matters, the PSC will recommend to Judge Breyer that appropriate consideration will be given to individual case contracts between attorneys and their clients and to work that has been performed by attorneys in their individual cases.

10.    The PSC agrees that, should there be a global settlement against any defendant(s), with the possibility of opt-outs under Rule 23(b)(3), the PSC will complete discovery against any such defendant(s) .

11.    The Participating Attorneys represent that the list appended hereto as Exhibit "A" correctly sets forth the name of each client represented by them who has filed a civil action arising from the use marketing and sales of Bextra and/or Celebrex together with the Court and docket number of each such case and that the list attached hereto as Exhibit "B" contains the

1  name and social security number of each client represented by them who has not yet filed a civil

2  action arising from the use marketing and sales of Bextra and/or Celebrex.

3      12.    The Participating Attorneys shall supplement the lists appended hereto as Exhibit

4  "A" and "B" on a quarterly basis.

5  This Agreement shall apply to each and every claim or action (whether state or federal, filed or

6  unfiled) arising from the use marketing or  sales of Bextra and/or Celebrex in which the

7  Participating Attorneys have a right to a fee recovery beginning the date the MDL was assigned

8  by the MDL Panel to this Court.

PLAINTIFFS' STEERING COMMITTEE

By:  _____
     Elizabeth J. Cabraser
     Lieff, Cabraser, Heimann & Bernstein, LLP
     Embarcadero Center West
     275 Battery Street, 30th Floor
     San Francisco, CA  94111-3339
     Telephone:  (415) 956-1000
     Facsimile:  (415) 956-1008


AND


By:  _____
     Participating Attorney
     [Firm Name]

# AGREEMENT
### (POST 90-DAY ASSESSMENT OPTION)

This Agreement is made this _____ day of _____, 200___, by and between the Plaintiffs' Steering Committee ("PSC") appointed by the United States District Court for the Northern District of California in MDL No. 1699 and **[FILL IN THE NAME OF THE FIRM EXECUTING THE AGREEMENT]** (hereinafter "the Participating Attorneys").

WHEREAS, the United States District Court for the Northern District of California has appointed Elizabeth J. Cabraser, Joseph Cotchett, Richard J. Arsenault, Don Barrett, Steve W. Berman, Peter W. Burg, Thomas P. Cartmell, Michael A. Galpern, Carlene Rhodes Lewis, Tina Bailer Nieves, Frank M. Pitre, Kristian W. Rasmussen, Mark Robinson, Christopher Seeger and Paul Sizemore to serve as members of the PSC to facilitate the conduct of pretrial proceedings in the federal actions relating to the use marketing and sales of Bextra and/or Celebrex.

WHEREAS, the PSC in association with other attorneys working for the common benefit of plaintiffs have developed or are in the process of developing work product which will be valuable in the litigation of state court proceedings involving Bextra and/or Celebrex induced injuries and marketing and sales practices (the "PSC Work Product") and

WHEREAS, the Participating Attorneys are desirous of acquiring the PSC Work Product and establishing an amicable, working relationship with the PSC for the mutual benefit of their clients;

NOW, THEREFORE, in consideration of the covenants and promises contained herein, and intending to be legally bound hereby, the parties agree as follows:

1.      With respect to each client who they represent in connection with a Bextra and/or Celebrex related claim which is filed or pending in any Federal court, unfiled or subject to a tolling agreement, each of the Participating Attorneys shall deposit or cause to be deposited in an MDL Fee and Cost Account established by the District Court in the MDL, a percentage proportion of the gross amount recovered by each such client which is equal to _____ percent of the gross amount of recovery by each such client.  For purposes of this Agreement, the gross

amount of recovery shall include the present value of any fixed and certain payments to be made to the plaintiff or claimant in the future.

2.     The Participating Attorneys, on behalf of themselves, their affiliated counsel, and their clients, hereby grant and convey to the PSC a lien upon and/or a security interest in any recovery by any client who they represent in connection with any Bextra and/or Celebrex induced injury and marketing and sales practices, to the full extent permitted by law, in order to secure payment in accordance with the provisions of paragraph 1 of this Agreement.  The Participating Attorneys will undertake all actions and execute all documents which are reasonably necessary to effectuate and/or perfect this lien and/or security interest.

3.     The amounts deposited in the MDL Fee and Cost Account shall be available for distribution to attorneys who have performed professional services or incurred expenses for the benefit of the plaintiffs in MDL 1699 and any coordinated state court litigation pursuant to written authorization from the Liaison counsel of the PSC.  Such sums shall be distributed only upon an Order of the Court in MDL 1699 which will be issued in accordance with applicable law governing the award of fees and costs in cases involving the creation of a common benefit. Appropriate consideration will be given to the experience, talent and contribution made by all of those authorized to perform activities for the common benefit, including the Participating Attorneys.

4.     As the litigation progresses and work product of the same type and kind continues to be generated, the PSC will provide Participating Attorneys with such work product and will otherwise cooperate with the Participating Attorneys to coordinate the MDL litigation and the state litigation for the benefit of the plaintiffs.

5.     No assessment will be paid by the Participating Attorneys on any recovery resulting from a medical malpractice claim against a treating physician.

6.     It is understood and agreed that the PSC and Common Benefit Attorneys may also apply to the Court for class action attorneys' fees (including any multiplier) and reimbursement of costs, if appropriate, and this Agreement is without prejudice to the amount of fees and costs to which the PSC and Common Benefit Attorneys may be entitled to in such an event.

7.      Upon execution of this Agreement, the PSC will provide to the Participating Attorneys, to the extent developed, the PSC Work Product, including access to the PSC's virtual depository.

8.      The Participating Attorneys shall have the following rights:

a.      Full participation in discovery matters and appropriate committee assignments with full recognition of the participation of the Participating Attorneys;

b.      Appropriate participation and consultation in settlement negotiations;

c.      Appropriate participation in trials, class matters, management, fund administration and allocation of fees and costs.

9.      Both the PSC and the Participating Attorneys recognized the importance of individual cases and the relationship between case-specific clients and their attorneys.  Regardless of the type of settlement or conclusion eventually made in either state or federal matters, the PSC will recommend to Judge Breyer that appropriate consideration will be given to individual case contracts between attorneys and their clients and to work that has been performed by attorneys in their individual cases.

10.      The PSC agrees that, should there be a global settlement against any defendant(s), with the possibility of opt-outs under Rule 23(b)(3), the PSC will complete discovery against any such defendant(s).

11.      The Participating Attorneys represent that the list appended hereto as Exhibit "A" correctly sets forth the name of each client represented by them who has filed a civil action arising from the use marketing, and sale of Bextra and/or Celebrex together with the Court and docket number of each such case and that the list attached hereto as Exhibit "B" contains the name and social security number of each client represented by them who has not yet filed a civil action arising from the use marketing, and sale of Bextra and/or Celebrex.

12.      The Participating Attorneys shall supplement the lists appended hereto as Exhibit "A" and "B" on a quarterly basis.

13.     This Agreement shall apply to each and every claim or action arising from the use marketing, or sale of Bextra and/or Celebrex in which the Participating Attorneys have a right to a fee recovery.

PLAINTIFFS' STEERING COMMITTEE


By:     _____
        Elizabeth J. Cabraser
        Lieff, Cabraser, Heimann & Bernstein, LLP
        Embarcadero Center West
        275 Battery Street, 30th Floor
        San Francisco, CA  94111-3339
        Telephone:  (415) 956-1000
        Facsimile:  (415) 956-1008


AND


By:     _____
        Participating Attorney
        [Firm Name]

478080.6                          - 4 -                          **EXHIBIT "B"**